**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

June 25, 2021

*VIA ECF*

The Honorable Katherine Polk Failla
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Daniel Zavala,* 18 CR 735 (KPF)

Dear Judge Failla:

Daniel Zavala was still a teenager when he committed the offense for which he now comes before the Court to be sentenced. At 19 years old, Danny, who otherwise has no criminal history, engaged in thoughtless and juvenile decision-making by agreeing to help a group of older, more sophisticated individuals in their drug business. At their direction, Danny traveled cross-country to a stash house in Yonkers, where he did as he was told, including delivering samples and larger quantities of the drugs that were stored in the house.

Danny was arrested nearly three years ago in July 2018. To write that Danny has matured and grown since then is a gross understatement. Today, Danny is quite literally changed. Due to natural maturation and the deep self-reflection spawned by a federal criminal indictment, Danny has transformed from a floundering, awkward boy who struggled with abandonment and other issues to a determined, young man on a promising track. In his moving letter to the Court, (Exhibit A), Danny articulates how far he has traveled from the dysfunctional and difficult childhood that culminated in his arrest. In the volume of letters attached from Danny's family and community, (Exhibits B—M), they corroborate Danny's emotional and mental maturation. Today, Danny is grounded and

In re: *United States v. Daniel Zavala,* 18 CR 735 (KPF)

stable. He is supported and guided by his devoted aunt and uncle. He is engaged to be married. He is gainfully employed in a job with room for growth and at which he derives confidence and self-value. He participates in trauma-based therapy. He has recommitted himself to his Church. He is a mentor to young people who find themselves rudderless and depressed, like Danny once did.

As he explains in his letter, Danny has simple wants: to work hard, care and love for his family, and to give back to his community. We respectfully ask the Court to impose a sentence that allows Danny to continue on his path to achieve these admirable goals without a derailing prison sentence. Danny has been punished, deterred, and rehabilitated. To send Danny to jail, even for the modest period recommended by the Probation Department, is harsher than necessary in light of his extraordinary story of trauma and redemption. The goals and objectives of sentencing can be achieved without prison.

## BACKGROUND

A. Danny's Profoundly Unstable Childhood

Daniel Zavala was born in Upland, California in 1998. His parents both emigrated from Mexico before starting their family. Danny is the middle of three children. He has two sisters, Ayleen and Wendy Juliany. Wendy is deaf and the family communicates through sign language with her.

Danny's parents' relationship was strained. The couple was on-again and off-again. Danny's mother did not work because she was caring for the children. Danny's father worked construction but his pay often fell short of providing enough for the family. The couple fought over money, over Danny's father's frequent absences from the home, and over issues related to Danny's father's struggles with drugs and alcohol. In the chaos, his parents paid Danny little mind and did little parenting. As one family member in her attached letter explains, "Daniel was often left to fend for himself. His childhood lacked the role of a normal parent; there was no one telling him to do his homework, eat healthy, and go to bed on time." Elivia Guillen Letter, Exhibit C.

In re:  *United States v. Daniel Zavala,* 18 CR 735 (KPF)

Danny's family also moved around a lot, and not always as a single unit. Danny was moved to a new city or state practically every school year, sometimes living with his mother and siblings; sometimes living alone with his father; and sometimes living with distant family members. Danny has attended schools in at least three California neighborhoods (in San Bernardino, Upland, and Fontana). He has lived in and attended schools in Las Vegas, Nevada; Zapata, Texas; Tucson, Arizona; and Mexico. Unsurprisingly, Danny was a loner who had trouble making friends. He preferred not to get too close to classmates he would inevitably leave behind. Danny was painfully quiet, exceedingly shy, and an introvert.

Danny tried to do well in school but, with his frequent moves, he always fell behind. And, his parents provided no support for his educational needs. In 2016, after a longer stretch of time than usual in one location, Danny's mother abruptly pulled Danny out of school during his last year of high school in Arizona to relocate them to Mexico. In Mexico, Danny could not earn his high school degree. Despite his parent's devaluation of his education, Danny desperately wanted to complete his schooling. He reached out to his aunt and uncle, the Koldes, and asked if he could move in with them to California so he could re-enroll in high school. Danny moved to California at 17 years old, with a D-average, unlikely to graduate. But, he committed himself to earning his degree. He took night and weekend classes and enrolled in a continuation school, Citrus High School, from which he graduated in May of 2017.

    B.  Offense Conduct

At the Koldes, Danny appeared to be recovering from the trauma of his childhood. After graduating high school, he enrolled in a community college and set a goal of enlisting in the Marines. Applicants to the Marines must pass a physical exam and a written exam, the ASVAB. Danny sat for the ASVAB multiple times, but he could not pass. In this timeframe, Danny also was under immense pressure from his mother, who wanted him to reunite with her in Mexico. Still chasing her affection and feeling dejected about his prospects in

The Honorable Katherine Failla  
June 25, 2021                                                                                                  Page **4** of **6**

In re:  *United States v. Daniel Zavala,* 18 CR 735 (KPF)

California, Danny moved to Mexico. He left behind the structure and support he needed to thrive. In Mexico, his mother remained emotionally distant and all but ignored her son. Without direction or guidance, Danny met men who were involved in the drug trade. They were especially interested in "hiring" Danny because he was a U.S. citizen who could travel easily. Danny was still a teenager and easily convinced into joining their conspiracy. Danny agreed to help them, including by traveling in the summer of 2018 to Yonkers, New York, where he and his co-defendant watched over a stash house in which drugs were stored. When directed, Danny delivered samples and packages of the drugs to would-be buyers.

On July 10, 2018, Danny was arrested and transported to federal court where, so overwhelmed with fright, he suffered from a panic attack and had to be taken to the hospital before presentment.

C. Danny's Maturation and Admirable Progress Since His Arrest

Danny was rocked to his core by his arrest. After his release, he immediately asked to return to the Koldes' home. They were happy to help Danny get back on his feet. Danny has lived with the Koldes since his arrest. With their guidance and grounding, Danny has thrived over the last three years. As Danny writes, "everything finally seems to be falling into place…"

Danny is working. He works with his uncle for the Coca-Cola organization. As he explains, "[e]very day, I wake up excited to go to work. I love that I have a schedule, and that I get my day started early in the morning." Exhibit A. Danny's aunt and uncle explain, "Daniel [finds] solace in working hard, and making an honest living. The shame Daniel felt from his [arrest] was really prominent, but slowly, as he worked hard at the warehouse, his attitude started to change." Exhibit B.

Danny is in therapy. After his arrest, Danny acknowledged that he struggled to process and cope with the lasting effects of his difficult upbringing. He reached out to my office and asked if we could help him find a counselor. As a result,

The Honorable Katherine Failla
June 25, 2021                                                                                              Page **5** of **6**

      In re:  *United States v. Daniel Zavala,* 18 CR 735 (KPF)

Danny has been in treatment since 2019. He was diagnosed with depression. In addition to medication, Danny engages in talk therapy.

Danny loves and is loved. He has excised all the negative forces in his life and surrounds himself with a small circle of people who support his success. Those people include the Koldes and their young children, his extended family, Danny's girlfriend and her parents, and his Church community. Poignantly, Danny writes, "[f]inally, after nearly 20 years, I feel that I have and am part of a home." Exhibit A.

### ARGUMENT

If Danny had had that feeling of belonging since he was a child, it is unlikely that he would have ever went along with the group of men who asked him to help in their illicit narcotics business. His arrest on this case forced him to confront how his traumatic childhood fogged his ability to exercise his better judgment. Today, he is mindful and deliberate in his choices and, as a result, he is firmly on a path to a law-abiding, productive adulthood. And, he is supported and guided by a network of people who care deeply about him.

Section 3553(a) directs courts to weigh "the nature and circumstances of the offense and the history and characteristics of the defendant" and then impose the minimum sentence necessary (a) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes by the defendant; and (d) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553; *see also United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006) ("[I]f a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher [one].").

With these principles in mind and against the factual backdrop described here,

The Honorable Katherine Failla
June 25, 2021                                                                                          Page **6** of **6**

      In re:  *United States v. Daniel Zavala,* 18 CR 735 (KPF)

in the PSR, and in the attached letters of support, we respectfully urge the Court to impose a non-custodial sentence. Danny committed his offense while he was still a child. Since then, supported by his family, he has matured into a young man with a bright future. He poses the lowest risk of recidivism. He is not a danger to the community; to the contrary, he is an asset. His arrest and three-year long pending prosecution have been deeply punitive and chastening. His arrest alone has general deterrent value and a sentence that credits him for his positive, post-arrest efforts sends an equally important message to the public about rehabilitation. In short, the goals and objectives of sentencing already have been achieved here. A prison sentence is harsher than necessary. For these reasons, and in an appeal to the Court's discretion, mercy, and reason, we ask that you spare Daniel Zavala from jail.

Respectfully submitted,

/s/Julia Gatto
Julia L. Gatto
Assistant Federal Defender
(212) 417-8750

cc:     AUSA Justin Rodriguez (via ECF)